May it please the Court, good morning. My name is Michael Lanphier, and I represent appellants Ghacham, Inc., DBA Platini Jeans, Illuminated Clothing, Inc., Doing Business as Casanova, Casanova Lenomo, and various individuals named Ali Ghacham, Osama Ghacham, and Hussein Ghacham. And, Your Honor, by consultation with counsel for the appellants, we would like to reserve five minutes for our argument. We're going to jointly share the initial argument time with that, if we might. Keep your own time, please. All right. The purpose here that we're bringing is, in summary fashion, at least as to my clients, it devolves into two different areas. One is the over-breath of the order, the seizure order that was offered and approved by the Court involving a matter in which injunctive relief was granted and how that affected both corporate defendants as well as individual defendants. Are you contesting the district court's finding that there's a probability of success on the merits on the trademark infringement claim and that Versace would suffer irreparable injury from that infringement? Or are you just attacking the injunction itself and its scope? We are attacking the scope of the injunction, Your Honor. We are not contesting the fact that there was a likelihood of success on the merits as to the trademark infringement that Versace named itself. Well, doesn't the injunction provide for ordinary living and business expenses and allow for the transfer of assets so long as you seek prior approval from the master? I mean, it seems like there's an opening there 10 feet wide for anybody to go in and say, hey, we need something here. Well, to the extent that that was provided for, yes, on its surface that looks appealing. Sure does. But when it's put into effect is that hasn't happened. What has gone on is there was not ease of access to the special master. Do we know that from the record? We can't know because we have the order on its plain face. I've benefited from the experience of that. See, that's the problem. On its face, and what you've got to do is go back to the court and say, hey, we want this order enforced. We want access to this master. Correct. On its face, I mean, it seems to me to give you any opportunity that you need to come in and say this shuts, closes us down, doesn't let us operate, we can't live. The problem is the order on its face when it was granted was overbroad and went too far into the depth. Even though you provide this remedy or this outlet for a special master, it shouldn't have gone to that depth for items such as personal assets, personal living expenses. Unlike other matters brought to the court today, this was a civil matter brought for alleged infringement of, trademarked a brand name of the Versace as well as their goods. These were not criminal individuals. They were not arrested for anything. They were ordinary people living, having daily expenses. In a normal commercial case, it is quite acceptable to have a freezing of the assets to enjoin the further use of that infringing material. But this order went way beyond that. Not only did it go after individuals and corporations, it pierced the corporate veil without specific findings or holdings, and said those individuals literally have to seek permission to pay their mortgage, to buy their food. Isn't there some evidence in the record on the piercing the corporate veil part of it? Isn't there some evidence in the record as to these being family businesses and relationships with the people? And so if you could, if you were just talking about the corporation, all of the officers are all these people in the families, and then they would be able to do exactly what the court was trying to stop at this point, that they would be able to completely get around it so that there was a necessity. And also, too, doesn't the Federal Rule of Civil Procedure 65D authorize imposing injunction against individual defendants without piercing the corporate veil? Your Honor, yes, that rule would be true, except for, again, it's a multilevel of the defendants. Some of the, a large part of the defendants are mom-and-pop businesses, in which they are clothing establishments and they are sole proprietorships, in which you're going to automatically reach to the individuals for the corporate activity. My clients, for example, are duly incorporated entities operating, duly registered in the State of California. They have done all of the corporate formalities that you're supposed to have to have that afforded limitation of liability. Second of all, which goes to our first argument on challenge for error, is none of our objections were mentioned or ruled upon, and one of those related to the inadequacy of the evidence of that association. Here what we have in its plain face is you are guilt by ethnic association. We have individuals with different names. They happen to all be of Lebanese descent. Well, but then they all had the, well, it looks like it's the lawyer on the other side, but there's mention found all this either, you know, stuff that was counterfeit or infringed upon property. I mean, lots of it in all of these different locations. That was all before the court, right? Correct, and again, we're not contesting that aspect of the order that it was legitimate for the court to enjoin the use of the items in the garments that they should be seized and they should no longer be sold, but. Well, I know, but then their ethnicity to say that just because they happen to be a certain ethnicity and then they have, but they have all of these items in their stores, it seems to me that that's, you know, that's trying to say, well, therefore you're going after them because they're Armenian or because they're Lebanese or because they're this, but there was evidence before the court that the court was imposing this because these items were found in their stores. Again, as to each. And the same result would have been the same whether they were Irish or whatever. You're asking us to jump to the conclusion that this is all some kind of biased activity on the part of the court because they are Lebanese. Not exactly. What the unfortunate problem is, and the court was given inadequate evidence on that fact and was misled by the applicant, by the plaintiff. But you're not contesting that. We are contesting that the court's ultimate conclusion on that was erroneous because the tie of this ethnicity, what it was, you're tied by ethnicity, you're all in the clothing trade, and you all have. I didn't say you're tied by ethnicity, therefore I'm doing something. It was tied because then because of your common ethnicity and the allegation but no facts to support it, no evidence in the record that you are in a collusion or a concerted action of business, therefore you are all acting together to sell all of this infringing merchandise. The disconnect was. It wasn't some of it because there were some indication of transactions and money going back to Lebanon or something. So, I mean, and some people happen to be Lebanese and it was going back there, or some people are related, and related people a lot of times share their ethnicity. But to kind of take it to a level of race animus is pretty serious. Well, and it's been an argument either as overtly or an underlying theme of the appellee's argument that that was front and center of their arguments. The one individual to respond specifically to her comment was Mr. Muneer Awadah. Only one individual had a claim to that. That individual is responsible for his actions. But that wasn't used to paint everyone with the same brush. There were no facts to connect that one individual to the balance of these defendants. And that's where it goes to our over breadth argument that on that basis it was a superficial look, not going to the objections, not looking to the substance of what the individuals merit for their attention. And that's where the Court, in our view, made an error. Again, it's the over breadth of the argument. It's not freezing of specific assets. It's all assets. For example, as of this day, literally under an order that came in under seal without any prior notice, all documents were literally removed from my client's business. We are approaching ten months, nine months since that time. Those documents have still not been returned to this day. They literally took everything. Do you have access to them? We do not, Your Honor. No access at all? We have not had access to them. They have been under copying. They have people's private effects, day timers, personal checkbooks, all of that material. And there are current, so the Court is aware, there are current applications to demand the return of that that are currently pending. But if you look at what the over breadth of this order is, it has worked extreme hardship upon these individuals on that scale. What I'd like to do is defer to Mr. Fields. I'm sure he has some other comments. Thank you, Counsel. Thank you. Thank you, Your Honors. Good morning. If it pleases the Court, it's Bruce A. Fields from the Law Offices of Haney Buchanan and Patterson, representing Hassan Farhat doing business as El Rancho. We represent one of the mom and pop's individual defendants in the case, Your Honor. Your Honors, I believe the linchpin of the Court's order is premised on the allegations and accusations of criminal conspiracy amongst the 71 defendants. I'd like the Court to take judicial notice that on December 16, 2003, the district court, trial court, dismissed the RICO criminal conspiracy claims of the plaintiff. I have a copy of the Court's order. I apologize that we did not augment the record to include that. December what? 16th, Your Honor. So I assume then somebody on the basis of that asked for an alteration of the injunction. Not at this point, Your Honor. Because of the pending appeal, we wanted to pursue on the merits of the appeal. What you just told me, isn't that irrelevant? The dismissal of the claims, Your Honor? RICO's been dismissed, but you didn't attempt to go in and reformulate the injunction based on that, and you decided just to attack the injunction head-on. So we take it as it was when it was determined. Well, Your Honor, the special master is still in place, implementing the Court's order of the specific accounting requirements of each individual defendant, which was premised, and the whole concept of the special master being in place, was due to the alleged criminal conspiracy amongst the 71 defendants, And you're telling us there was a subsequent development, and you're telling us that you didn't take advantage of the subsequent development to go in and alter the injunction? Or the special master? At this point, Your Honor, we have not filed a subsequent motion with the Court relative to the Court's subsequent rulings pertaining to the criminal conspiracy allegations. That's your choice. Well, we're here. We want to let the Court know that the Court Well, I take a look at this whole idea, and the Court seems extremely sensitive to the very issues that you're bringing to our attention. The Court even quotes the idea that this is a terrifying thing, the prejudgment seizing of assets. It quotes Judge Fernandez or whoever it was and says, Therefore, that's why I'm denying the attempt to seize all cash assets, and I'm putting this special master in place, and any problems you've got, go to the special master and they'll be resolved.  Now, if, in fact, the special master is not doing what the special master is supposed to, you go back to the Court, you say, time out. First of all, you got rid of the RICO, so there's no more conspiracy, and secondly, the guy's not doing what you said he should be doing in order to protect us from all the problems that we told you we were going to have. Your Honor, I'm not disagreeing with Your Honor, but the very order of the accounting by the lower court relative to what the special master's involvement in this case is to include private accounting of the individuals, to reveal their private accounts, to reveal their private expenses, things that ultimately violate the privacies and their constitutional rights. They had their due process violated in that they were not given an opportunity to provide any evidence that they were not at risk to dissipate their assets as alleged by the plaintiffs. The plaintiffs solely relied on one defendant to tie in 71 other defendants on a theory that they're at risk because of the criminal conspiracy allegation that all defendants were at risk at dissipating their assets. And no evidence was presented to the lower court relative to any of the defendants outside of the one that they were at risk at dissipating their assets. Were there items found in your client's stores? Yes, Your Honor. There were items seized at the stores, but that doesn't jump to the next prong of requirement. But it does qualify as evidence. When you say there's no evidence, I take exception with there's no evidence. There was some evidence. Well, there's no evidence that the defendants would dissipate their assets in lieu of the litigation, which was the whole primary principle behind the issuance of the injunction. At least that is our reading of the court's order. And that's why we're here on behalf of our client, Mr. Farhat. Well, there's been a finding of probability of success on the merits of the trademark infringement. I assume against everybody. Well, Your Honor, we disagree. We want to challenge the merits of that claim, and we intend to do that. In the district court. In the district court, that's correct. But, Your Honor, we're here to challenge the injunction and the order relative to the accounting practices only at this time, that we feel that they're unduly burdensome, they're overly broad, that the evidence submitted relative to the potential dissipation of assets on the part of each individual defendant was unsupported by the evidence submitted by the plaintiffs in the lower court. And we feel that our client has been prejudiced by this overly broad and blanketed order, which includes 71 defendants that were linked together by their racial and ethnic backgrounds, which is reminiscent of what the United States did back in World War II with the Japanese retention camps. Because we were at war. The essential characteristics of the two sides of your analogy really don't hold a lot of water, but I give you high marks for good atmospherics. Your Honor, I'd like to reserve the rest. I've been locked in an internment camp by Earl Warren over the objection of J. Edgar Hoover. Your Honor, I understand that, but the analogy is that these defendants are required to report all their personal expenses, all their personal accounts. If you don't want to use all your co-counsel's time, you probably should sit down. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Renee Lawrence, and I'm here on behalf of Monir Owada. My arguments fall within the scope of the arguments that have just been presented to the Court. I'll try to not reiterate. But it is Judge Fernandez's separate opinion in Reebok that is the heart of Owada's appeal. And that was acknowledged by the district court here. Right. And the problem, however, is that still, even with the stipulation, even with the presentations of Special Master by Owada for additional, the release of additional assets for the monthly maintenance of his business, is still insufficient because he was given $10,000. The rent on his stores is $68,000 a month. The salary and utilities and overhead, general overhead of the business, approaches something like $500,000 a month. Isn't that implementation? And isn't that a question of the Special Master not living up to the Special Master's orders? Well, I think that to require each of the — Who's paying for the Special Master up front? I don't know the answer to that, Your Honor. Versace. Versace, I suppose. But I don't know — let me just backtrack for a moment and offer a reason, not an excuse. I had less than 12 days to review this record and prepare my brief because of other things beyond my control. So I'm not as conversant with the entire record as I would like to be. But as to Mr. Iwata, what the freeze — the scope of this freeze means is that every month, he must go back to the Special Master and things don't happen that quickly. You know, he must go back to the Special Master and say, I have payroll to meet. I have people that are depending on me for their livelihood and their family's livelihood. I have a business to run. I have electric bills. I have — But that's not inherent in the appointment of a Special Master. That's a problem with what the Special Master is doing or not doing. It seems that that's easily addressable in the district court. Well, I think it's — It's exactly what you said to us. The guy needs X amount of money. He's only getting X minus. And we go over there and the Special Master is not allowing us to function. You clearly wanted us to be able to function. It's not happening. Tell the Special Master to get with it. Well, that is —  It's the problem with the implementation of the injunction. Well, Your Honor, I think that there remains a problem with the scope of the injunction because of the number of defendants here, the various and disparate activities of each of them in terms of this — But they all got found with their fingers in the trademark cookie jar, Joe. They did. They did. And that's why, you know, the — most of them are not contesting the propriety of the injunction. It's only the scope of the asset freeze. And I think that to the extent that an appeal was made on the district court level, it's my understanding, and if I'm wrong, I apologize, but it's my understanding that the stipulation that went to the Special Master for additional funds for Mr. Iwata's rental on his businesses, nothing else, just the rental, was also before the district court. And I think it was the Special Master that approved it, but that extra money is only for rental. It is not for all of the other incidental and living expenses. And in the real world, having to go to the Special Master every single month and having the time issues involved in having the approval of the request made is not a realistic exercise of the court's desire to have, you know, the function. The problem, the other side will tell us, in the real world, if you don't sit on assets by the time you win the case, they're stopping there to recover. Well, they're sitting — they've seized assets. They've seized everything. And we're just asking that the district court — I mean, we're asking this court to say, Okay, look, this issue has not been determined by the Ninth Circuit yet, the scope. And according to Judge Fernandez's opinion, he would like to have ruled on that issue, but couldn't because it wasn't raised. And so Mr. Iwata is raising it, and Tres Hermanos are raising it. And the issue is that what I believe that the other appellants are saying and what Mr. Iwata is saying is that this is the absolute reach of the power of the court to freeze assets, to, as Judge Fernandez said, bring a defendant to his knees. I mean, put him to the wall, I think, was his phrase. Did Judge Fernandez say anything about the appointment of a special master to try to ameliorate this problem? I don't think so. Thank you, Counsel. Your time has expired. Thank you, Your Honor. Good morning. Philippa Richland on behalf of the Pele Gianni Versace. I think I'll just address some of the issues that were raised by counsel this morning, the first one being that this is a civil matter and not a criminal matter. However, I think the court has aptly understood that the basis of the civil action is encrusted in criminal activity. And counterfeiting is a crime in the state of California under Penal Code Section 350. So I think that when you're looking at under, yes, it's a civil case, but when you're looking at the underlying conduct for which the civil case arises, it is criminal. There's allegations of criminal conspiracy, and counsel is right. The RICO counts are no longer in the case, although that's not before this court. But there still does remain a conspiracy count in the case. So that necessarily was taken into account by the court in looking at what is, who are the parties, what is, what are the damages that are being sought in this case. And I think that the authority for the court, the inherent equitable jurisdiction is based on the fact that plaintiff in the underlying action is seeking equitable remedies. And the court is accurately and aptly looking at what ancillary remedies can be given to give meaning, to give some bite to that equitable remedy. And I think as the remedy being sought, just having the property, you know, they're saying, well, you have all our property already. You seized everything. Is that, are you asking for more than that? Because they're saying that would protect you, because you already have all the property. Well, in actuality, no, because one of the underlying claims is constructive trust. And if you have a situation, as we believe we do in this case, which is their assets are a product of unjust enrichment, then they are merely trustees holding that property for the benefit of the plaintiff. And in order to give that any substance, the court has to issue a freeze in some manner, or else there is no constructive trust. It's just, it's a right without a true remedy. Now, one of the other issues raised was this issue of the special master being appointed in relation to the RICO claims. And that's just clearly not what the court ordered. And I'll just read very briefly from under Section D, where the court indicates, Plaintiff Versace established a reasonable basis for this court to conclude it is necessary to appoint a special master to prevent defendant from transferring their assets and thus avoiding an equitable accounting for their profits from the sale of such counterfeit goods. So the reason for the appointment of the special master in the freeze was not just the RICO accounts that existed at the time, but also the other equitable remedies that were sought. The court aptly points out that at any time the defendants can come before the court and indicate there's a changed circumstance or there's now hardship or the mechanism of the special master isn't working, but that hasn't happened. And frankly, there is no evidence of hardship to any defendant before this court that it can consider. And for the record, I think it's incumbent upon me to correct something, and that is as follows. At the request of the defendants in this case to have their actual records returned, the special master undertook the duplication of every business record that was seized at enormous expense, over $100,000. And that was done quite early on in the case. And I cannot comment on what counsel has attempted to do or not do, but every item seized in this case, business records as well as evidence, has been available for inspection at a very minimum upon request. And that request is made through the special master. And the business records have been actually scanned and put on a CD, and those are available for counsel at their request. I believe it's a $25 charge to look at the scanned documents. If they want the actual documents, that request does have to go through the special master, but at a minimum, inspection is always allowed, and it's never been deprived to any defendant that has requested it in this case. So I just feel that in defense of the special master, that needs to be cleared up. And unless the panel has some specific questions of me regarding the issues raised. You're willing to submit? Yes. All right. Thank you, counsel. We'll give each one of you a minute to respond, should you care to use it. Thank you, Your Honor. Briefly, some items were brought up. The court has asked several of the justices here about you were caught with the offending goods. One of my clients, Gasham Inc., Platini, did not sell any of the goods. In the raid that happened, there were some Versace items that belonged to others because they were a distributor or a warehouse for someone. It was not their property. The evidence that was in front of the court was my client, Gasham Inc., as well as their two corporate employees, Osam and Ali Gasham, had not sold, had not marketed, had not done anything with these offending goods. Why did they have them? They had a facility in downtown Los Angeles that was in a boxed item for one customer going to Mexico. Their view is, and the argument that the evidence we gave to the court that is in the record is, they had no Versace items whatsoever. They did not sell, they did not market, or they did not have it. Back to the merits of likelihood of success against your client. Well, that was the court's finding. That doesn't mean it wasn't objected to. And, of course, in an injunctive relief action, the court concluded upon the evidence in support and the evidence opposing. That was the court's finding at that time. And I don't want the court to have the impression that we're conceding that. We are not at all. That was over our objection that the court made that finding. Yeah, you're not conceding it, but you're not attacking it here either. No, well, that's not the merits of the appeal. The appeal is as the over-breath of the seizure order. Secondly is, when we look at this question, was the total asset freeze a necessary ancillary relief to accomplish complete justice? And that's related to the Reebok case. Here, there was evidence in the record that these products at Limited, Casanova, were two to three styles of over 200 styles. One to two percent of all of the goods. There was no evidence presented that these supposed products or garments and their ill-gotten gains constituted a majority of our products. As a matter of fact, the evidence was opposite to that. It was a minority of dollars. What we had here was, in effect, what you don't see, is a prejudgment writ application to seize everything. What do you mean a total asset freeze? I'm a little confused by that because it says here, the court has denied plaintiff's request to seize cash assets. What is happening on that is we have to account, literally, for every dollar that goes in and out of these companies without being expended with a $10,000 limitation for cash items every month. So every dollar. But it hasn't been a total asset freeze. Well, no. It's not a freeze in the sense that you have to turn it over, but there is, in a different context. Yeah, so you keep calling it a total asset freeze, and I see the court saying we're denying their request to seize cash assets. So it's not a total asset freeze. It's a restriction. You're right. I'm being inarticulate on that aspect of it. Finally. Bill O'Reilly would say you're spinning. I have listened to Mr. O'Reilly many times. What we're trying to do is, the straitjacket that we were put in is not something that ordinarily happens. The evidence that was presented justified a smaller, narrowly focused injunctive relief, and our problem is the overbreath of the injunctive relief should be brought down. Thank you. Thank you. Your Honor, briefly in response to Ms. Richland's argument, I'd like to point the Court's attention to the excerpts from the record pertaining to the special master order from Judge Rotero. Page 36, lines 24 to page 37, 1 through 5, where the Court specifically states, and I'd like the Court, Your Honor, to keep in mind, this is a civil action, not a criminal action any longer, in terms of the allegations that are still in place. The Court finds it necessary to require defendants to report to the special master because, in trial, they are accused of a criminal conspiracy. I read that. Okay. Does it also say what she read, too, under D? Yes, Your Honor, it does, but I think that, as I said, the linchpin of the Court's order relative to the accounting was because of the fear of the potential dissipation of assets of these defendants. It was based on the finding that one defendant was diverting funds to Lebanon. And when was the RICO count? When was RICO eliminated from the case? December 16th, Your Honor. And why wasn't there an immediate request then to alter the scope of the injunction? We haven't done it, Your Honor. Okay. Thank you. Thank you. Do you have anything else to add, Counselor? Thank you both. The case is already resorted and submitted. It will be in recess until tomorrow morning.
judges: Hall, Trott, Callahan